When the parties are ready, William Pender v. Bank of America. May it please the Court, I'm Julia Penny Clark here representing the appellants. In 2015, this Court held that plaintiffs were entitled to an equitable accounting for profit. You explained that in such an equitable accounting, the object is to calculate the investment profits generated by the assets belonging to the plaintiffs. So you won the case. You won. We won here. We go back, and what the District Court did was not the accounting for profits that the pre-merger equity courts did in cases for commingled money. And that's a very special rule. You explained in your opinion that the object here is to strip the wrongful gains from the defendant. But you didn't specifically tell the District Court, because the issue wasn't here, how to deal with this very specific problem that's raised when a defendant wrongfully commingles money in an account with other money. So your whole case depended on whether we accept the plaintiff's version in terms of the approach the bank should take or the defendant's version. I mean, because if we go one way or the other and accept, well, the approach taken at least, accepted by Judge Graham here, Muller, was reasonable, at least one that could be used, then that sort of informs how we handle this. Yes, Your Honor. Our entire appeal depends on the argument that Judge Mullen used a method for this accounting for profits that is not consistent with the rules that the Supreme Court requires to be used in ERISA 502 cases. So your whole case comes down to whether the commingling, the one-pot analysis, as I like to think about it. Once the funds were commingled, they were entitled to the proportionate share of the profits. That is correct, Judge Keenan. And your case rises and falls on that. Isn't that correct? That is correct, Judge Keenan. Either the equitable principle applies in ERISA cases or it doesn't. Yes, that's correct. Let me ask you this. Bank of America had an investment strategy, and they separately tracked that money that belonged to your clients. And technically, is that commingling? I think there's two separate points there, Your Honor. Number one, the witnesses did not testify that they separately tracked the money that belonged to our clients. What they testified, these are the bank's witnesses, what they testified was that they had an investment strategy that was their internal way of thinking about how the money in this commingled pot was doing. So that's point one. Point number two is that the segregation under the equity rules that applied premerger, segregation could not ever occur. It's absolutely the opposite of what happened here. Here the money was all mixed together with the objective of having the gains from the plaintiff's money used to benefit the rest of the commingled pot. Segregation means that they are in separate trusts, and what's in one part of the trust cannot benefit the other side. But it sort of worked out kind of good, at least from your client's perspective, because by segregating, the bank says, you know, we thought initially we could do a better job of investing, but it turns out we didn't do as good a job at all compared to the pool of all those people out there investing, which sounds incredible to me, but that's what they say. And as a result of it, they said we had to eat that 13% difference. That is what they say. So you came out better, at least from that perspective. I get it that you want the benefit of the whole pot of that. Well, as this Court said in Pender 1, the object here is not to compensate for a loss on the plaintiff's side. And, in fact, what you found was there was no loss that needed to be compensated on the plaintiff's side, but that what you had was a conscious wrongdoer, the bank, which mixed this money, and the purpose of the equitable accounting for profits is to take the gains away from the wrongdoer. Before we go too far, I want you to make sure you address this point here. If you look at Section 502A3, what I see here is a question. Everything you said is reasonable, but if that gives the district court the discretion or empowering them with some flexibility on deciding, in terms of equity, what equitable relief is generally warranted, then that whole word you used at the beginning, required, kind of falls out. And if it's not required to use this pro rata rule that you want us to use, then Judge Mullen can fashion his equitable relief that he thinks is warranted. The Supreme Court in Knudsen answered that question in our favor. What the Supreme Court said in Knudsen was that when Congress used the phrase equitable relief in 502A of ERISA. Appropriate equitable relief. You can expand the phrase if you like. That word appropriate kind of gives them a little leeway, doesn't it? No, I think it's very clear from Knudsen and the whole line of cases that the Supreme Court addressed 502A in, that when we're talking about appropriate equitable relief. I don't get the point. What is the point of saying equitable relief is required? You don't need appropriate if you're just going to require it. If you take a look at the Supreme Court's opinion in Cigna v. Amaro, for example, which the bank cites in its brief, the court drills down to various specific remedies that were available in equity. And certain remedies were appropriate in particular situations but not in others. So what the Supreme Court has said starting in Knudsen is we can't just say equitable relief. We can't just free the judges to do whatever they think is fair in a particular case. Congress meant that the remedies that are available to the federal courts under 502A are those remedies which the pre-merger equity courts recognized and administered. Is it your position that the proportionate share of the whole is a per se rule? Yes, Your Honor, it is. If we find it's not, then you lose. That's correct. But I want to get to why it is that it is a per se rule. First, I'm trying to answer Judge Wynn's question, which is that the Supreme Court starting with That's a critical question. Yes, it is. How do you want to go with this? It's absolutely critical. And what the Supreme Court said starting in Knudsen was Congress didn't intend the courts to make this up as they go along. In fact, Justice Ginsburg, in a dissenting opinion, said, Surely Congress meant that the equity courts should be able to continue evolving their remedies to suit specific situations. Now, Knudsen did address the separate question of whether an appropriate remedy is available. Is that right? That was part of the whole analysis, yes. That is It's not the question here. No, the question here is whether the district court used the appropriate remedy. You decided that it was available in your earlier opinion. Or the question is whether the district court has to award such relief, is required to do it that way. That is correct. And that's where I want to get to Judge Floyd's question. But the Supreme Court, the whole series of cases, Cigna versus Amaro, which took three different equitable remedies and said, Well, one of them requires detrimental alliance. Another one is just actual harm, not detrimental reliance. They're clearly saying those rules, all of the rules that applied in the premerger courts before 1938, are the rules that the district courts must follow in administering appropriate equitable relief under 502A. So now I want to get to your question, Judge Floyd, which is the 1936 restatement of restitution, which is what the Supreme Court cites repeatedly as the gold standard for defining what remedies were available at equity before merger. It's like two years before 1938. It contains Section 210, and it is a clear answer, and it's mandatory. Part 1 of Section 210 defines the problem, where a person wrongfully mingles money of another with money of his own, and with the mingled fund, acquires property. And then Part 2 says that if we're dealing with a conscious wrongdoer, which is the case here, the victim, quote, is entitled at his option to a share of the property in such proportion as his money bore to the whole amount of the fund. Then it goes on in Comment D to make clear that this rule means the whole fund, including profits that have been made on the whole fund. But that all goes to just a separate question of whether this remedy is available under 502A3. I mean, that's really what you're talking about. You're not talking about whether the court must award such relief if such a relief is available. Well, with due respect, Your Honor, I believe this does say that it must be awarded, because what it says is – You've got to read it somewhere, because it's not reckless in it. It says the victim is entitled at his option to a proportionate share of the whole commingled fund, including its profits. That's not a discretionary rule. And that's not a rule that says that the district court can accept some creative method that a defendant has come up with to say that in this entire pot of money, I made money on my part. You lost money on your part. Now, you know, the equity courts spent hundreds of years trying to figure out how to deal with this very specific problem, which is commingled money in a single fund. And they tried a lot of different ways to do it. But what they ended up with, as Professor Scott describes in the article that we've cited in our brief, is this per se rule, which says this is what the victim is entitled to. We aren't going to let the wrongdoer have the opportunity to manipulate. In most cases, it's the wrongdoer that's going to have the records. We're not going to let the wrongdoer manipulate and try to come up with some way of saying that my part of the pot made money, your part of the pot lost. It was a straightforward rule. It is a bright line. It should never be necessary to have a week-long trial to try to track and figure out whether this part made money and this part lost. And let me add this, which I think is very critical. We cited the 1936 restatement. We cited Professor Scott's 1913 article, Professor Taft's 1939 article, both of which are cited by the Supreme Court in Montanil. We cited this Court's 1942 decision in McBride v. Burnett, which says the proportionate share of the profits rule is well settled, and more. And many more cases are cited in the articles and treatises in the restatement. We built a veritable wall of authority that this was the rule that the equity courts followed premerger. The bank does not have even one brick. It has not cited a single case, a single treatise, or a single article that shows that any equity court premerger ever allowed a wrongdoer to use creative accounting to say, we made money on our part of the pot, you lost money on yours. If that was always the case, you'd win. And you're right. This rule is predominant. It's all but universal. The question goes to the question is whether the trial court is required to use it. And even in the previous case, when we sent it back on Pender, we focused on the Mara case that the Supreme Court had had and looked at that language. They looked at categories. And the categories were there. And nowhere in that opinion says he's required to use that. But if you deal with predominance and universality, you're right. I don't know if anybody else has used this other rule here out there. It has never been used. This case turns on whether the district court was required to use it. Yes, Your Honor. And I'm not sure it arises from any of the Supreme Court cases, our case, that he is required to do it for appropriate equitable relief. I mean, that's really the turning point of which way we go on this case. And the Supreme Court did say that appropriate equitable relief means those rules, those conditions, those attributes of the rules that the courts in equity were applying pre-merger. And Section 210 of the 1936 Restatement describes this as something to which the victim is entitled. He has a right at his option to this remedy. And that describes a mandatory remedy. And the fact that we have cited many cases that have the mandatory remedy, and the bank has cited not a single one involving money. And remember when you listen to the argument from the bank, money is special. That's what Professor Scott said in the article which we have cited. And it's important to keep in mind. Thank you. Good morning, Your Honors. May it please the Court. I guess I have a sense of deja vu all over again. Judge Winn, I don't know that I can improve on your characterization of the pivot for this case. The question is, did this court, in remanding it back to the district judge, require, in circumstances where there was candidly, in my mind, I'm sure the plaintiffs would characterize it somewhat differently, but in my mind, largely a technical violation of ERISA, is it under those circumstances mandatory that you adopt a proportionate share of the whole rule? Or don't you normally apply the rule that equitable courts apply in all other contexts, which is you look at causation and you attempt to make a reasonable apportionment? No one else has taken the approach that's being applied by you in this case here. I mean, almost universally, the rule advanced by the plaintiffs here, the pro rata rule, is the one that's used. And even if it's not required, you still are left with the question of whether this attribution approach that Judge Mullen went with, was that appropriate, equitable relief in a case like this? Well, and it's important to realize that the plaintiffs have not raised any factual issues with respect to how the attribution was determined. It's simply a question of, is he absolutely prohibited to make any effort at attribution under any circumstances? Because otherwise, you're going to be under a factual question. And at the end of the day, do we have cases where they followed this? No, but we have a lot of cases in which the courts say the purpose of this exercise is to simply eliminate the profits that came from those assets. In fact, that's exactly how this court characterized it. But doesn't Restatement 51 help you out in terms of the remedies? Absolutely, because the Restatement Section 51 says, look for causation, you look for apportionment, and at the end of the day, the purpose of this is to, as reason and fairness dictate. And it seems to me that's language that expressly confers upon the district judge the authority to decide what's fair and just. Not unbridled fair and just, but reasonable. Excuse me, I'm sorry. I'm sorry, Your Honor. We were also quoting Section 51, in our opinion, at page 366, as saying that the object of an accounting is to strip the defendant of a wrongful gain. And why isn't that what we're talking about here? What the defendant gained, not what was required to make the plaintiff's whole under their hypothetical investment returns, but what did the defendant wrongfully gain from its unlawful investment strategy? And the district court's specific and unchallenged finding of fact is that there is not one dollar in that plan today that would not have been there if they had not engaged in the transfer in the first instance. That every nickel that's in that pot is a nickel that was created by the plan from assets otherwise used, not these assets. And that finding's uncontested, and that says that the plan made no gain under these circumstances. And it seems to me, if the shoe were on the other foot, I have no doubt as to how the plaintiffs would be arguing this. In essence, the bank did a worse job investing than the plaintiffs did, is what you're saying? Yes. Not the plaintiffs necessarily. I mean, what the bank did was match the plaintiffs' choices. What happened in other situations with others is that we had more success because the plaintiffs, for better or worse, invested very heavily in the bank itself. And that's sort of understandable. They were employees of the bank, so they probably have some enthusiasm for the bank. Whereas the plan itself didn't invest as heavily in bank stocks. Well, this is an interesting case. I mean, it's intriguing in terms of the way it all came about. And, you know, just before the IRS got in and sort of flipped it around for you and went in a different direction. But it seems to me that even if the bank did a poor job in investing the money, it seems like to me that just having access to that money has some value. If it's commingled, and having access and having the ability to do something a little different, whether to put it on a separate pot here or whatever, just having that money, there had to be some value. And I think that goes to the question, even if we agree that the judge had discretion, wasn't it appropriate for equitable relief here? Let me ask you one question. Can I answer that one, though? Yes, please. Can I make an observation with respect to that? Please. Because, you know, the plaintiffs did have an alternative theory about the use of the money. And they put that in front of the district court, and he rejected that, and they didn't appeal that side of it. So it is certainly possible that there may have been an alternative theory that they could have put forward, but they didn't. And so the court has before it what it has already identified as the very stark question of whether there is a per se rule that says you always go to the proportionate share of the whole. Didn't Judge Mullen hold that as a matter of law he could not apply the plaintiff pro rata rule? No, he didn't say that as a matter of law. He said, applying Section 51 and this Court's ruling, I'm supposed to make a determination of what, if any profit, resides in the plan as a consequence of the transfer. And he viewed that as a causation requirement, and he concluded that if you apply normal causation principles to what happened here, the finding was there is not a penny. Indeed, we lost a lot of money, but at the end of the day, there is not one cent in this plan that would not have been there if the transfer had not taken place, that all that money is exactly the same as it would have been. There is no causation, and under those circumstances, rules of causation attribution ought to be applied, and the district court did that. The point I was going to make a minute ago is if you flip this around, and if we had followed a different investment strategy and had, in fact, made money based on that strategy that would have affected their part of the plan, but the plan overall lost money, there is no way in the world that the plaintiffs would have said, oh, no, that's okay. Your plan overall lost money, but your use of our assets gained money, so you get a pass on it. That's not the rule either. And the truth is, if the judge had said, I can't make a finding of causation under these circumstances, I don't think I can do a fair job of attribution, and had adopted the proportionate share of the whole, our argument here would be much, much harder, and my guess is we would be arguing on the question of whether we have equitable defenses, which obviously the district judge didn't decide at this stage, and that would be unremanded if the court were to, in fact, adopt the per se rule that the plaintiffs had put forward. What's the status of unjust enrichment in this case? Well, there was no unjust enrichment. We were not enriched as a consequence of it. The money that we had ended up going, all the money that the plaintiffs wanted went back to the plaintiffs. None of them was injured, and we didn't end up with any profits as a consequence of the investment strategy. That was reasonable under circumstances. There's no challenge to that strategy. The whole pot profited, did it not? The whole pot profited. There was a 28% return on the whole pot. So, again, it gets back to the legal question. At the very beginning that Ms. Clark brought up, I mean, which way do you go? There's no question about it, and it seems to me that none of the Supreme Court cases remotely answer this question. The statutory language is other appropriate relief. And what is other appropriate relief under these circumstances? And most people's view of the world is district judges have discretion to do just what this judge did, figure out what was the cause and attribute it under those circumstances. That decision is entitled to respect, and the court should affirm and end this litigation. Are there any arrested cases anywhere that say that this is an appropriate exercise of equitable relief? I don't know of any cases where these facts would have arisen in other cases. But if you look at the, I mean, all of the cases, for instance, the Nichols case in the Ninth Circuit that they rely on, it says, look, if they had taken the money and thrown it out the window, there would be no causation, and they'd be entitled to no profits under those circumstances. So, I mean, all of those cases recognize that causation and attribution are fundamental concepts within developing an equitable relief. I'm just trying to figure out how one writes an opinion to support your position in this case, other than to say that the district court just exercised its discretion. Because if you have the whole body of equitable law pre-merger saying that disgorgement is an accounting for profits, okay, and there's not a whole lot on the other side, how do we write it? Well, you write it and say an accounting for profits doesn't mean that there's a per se rule that you look at the entirety of the plan. It may be that that's, if you can't attribute it, if you can't demonstrate causation, sure, that would be the rule. But if you can demonstrate causation, and if you can attribute it, then you should attribute it, or at least the district court is entitled to follow that course, and that's precisely what he did under these circumstances. And as a consequence, the plaintiffs get, there are no profits, and the plaintiffs are entitled to nothing at this stage. So help me understand something. As I understand, the bank treated the fixed income part of it differently from the pension funds. Why shouldn't they be able to get the profits off of the fixed income part? Well, first of all, they didn't ask for that. But second of all, if they had asked for it, why should they get it? Because we're dealing with equitable relief here. Well, they could have asked the district judge to try to parse it however they wanted to. My guess is at the end of the day, they ended up with a number that wasn't all that impressive under those circumstances. And I'm not saying the district judge wouldn't have had discretion to come up with some other remedy if presented with a particular argument, but they didn't make that. You did say it was distinguishable. The question is, at least you know that's out there. Why shouldn't they get the profits off of that? Well, at the end of the day, what we did was we hedged. And so we matched up the equity side. That was the hedge. And then we invested on the equity side from the debt side. And that's where we lost all of our money, obviously, was the equity side vis-à-vis the debt side. But plaintiffs didn't ask for that. They didn't say we just want that part of it. And again, I would say if you want to go back, could we in fact be required to look at every single plaintiff and whether he or she gained or lost under these circumstances? That wouldn't be a class action, to be sure. But the judge said he didn't want to go down that path. And again, they haven't raised that issue. That's not an issue here. Their issue is all or nothing. And equity does not typically live in per se rules, and I don't think it did in this context. Any other court ever applied this attribution rule in this type of a fashion? Not in this type of a fashion, but every court recognizes that causation remains a fundamental requirement. So this is the first time it would be applied in this type of circumstance. Right, but I don't think you're going to get this type of circumstance. And again, there is one other proposition that I think it's important for the court to keep in mind. With respect to the old rule that Ms. Clark spoke about, it's talking about a conscious wrongdoer. It's not talking about what happened here. I mean, we violated the law, to be sure. That's what the court just held. But the idea that we commingled these assets in some way that was designed to injure anybody is simply not true. We were not a conscious wrongdoer. We thought what we were doing at the time was perfectly legal. And so adopting a per se rule in those circumstances is simply not an appropriate way to go. If there are no further questions, Your Honor, thank you for your time. We are adjourned. Ms. Clark, could you begin with Mr. Phillips' last point? This isn't a case of the classic nefarious wrongdoer. There was an assessment. They ended up being in violation of the law, but based on the distinction he's drawing, maybe the one-pot theory does not, as a matter of law, have to apply here? The bank was a conscious wrongdoer. We addressed that in our brief, and they did not respond to that point at all in the appellee's brief. They deliberately commingled the 401K money that belonged to our plaintiffs with their own money for the purpose of making money for the bank. That is very clear in this Court's first opinion. That was what they had in mind. It was prohibited by ERISA. They knew before they made the transfers that that was likely a violation of the law. We cited all of that in our brief. That is the definition of a conscious wrongdoer under the restatement. What standard of review should we use to review the district court's decision that it was, in fact, appropriate equitable relief? The standard of review that applies to the selection of the method is a question of law. Based on the fact that the pre-merger equity courts followed the per se rule, and I want to get to a little bit more of that in a moment, Judge Mullen's refusal to follow that rule is an error of law, and it's to be reviewed on that basis. The questions have largely focused on how do we know that this is something that the court must do, as opposed to our longstanding view that equity involves discretion. Let me start. The Supreme Court, we had Knutson, which says follow the methods, follow the rules. We follow with Montanil in 2016, which specifically cites to the pre-merger equity rules in talking about the very problem of money commingled together with other money. We have the Signo v. Amaro, which specifically refers the lower courts to the elements of causes of action or claims and remedies in equity as they existed pre-merger. You have Saraboff v. Mid-Atlantic, which even went to the point of saying we have to look to the pre-merger equity rules to determine what defenses are available. The same was true in the Supreme Court's decision in McCutcheon v. U.S. Airways. The court has made it very clear that the whole body of pre-merger equity law has been imported into ERISA 502 by Congress. That is what Congress meant by appropriate equitable relief. The question then is what was the pre-merger rule and was it mandatory? Now, it's simply a, it's a, I'm sorry, the pre-merger rule was stated in restatement, the original restatement, 1936, section 210. Section 51 of the 2011 restatement third of restitution, which Judge Floyd referred to, states in its preface that it is not making any effort to distinguish between the remedies that were available at law and the remedies that were available at equity. The commentary to section 4 expressly says this is for merged courts and we're not trying to distinguish between those rules. The introduction to chapter 7, which is where section 51 resides, even goes on to say that section 51 is primarily addressing the rules at law, not the rules at equity. And the commentary to section 4 even specifically says, in talking about ERISA, the meaning properly ascribed to the words appropriate equitable relief is used by Congress in a 1974 statute is a question outside the scope of this restatement. Do you maintain that the trial judge in this case essentially said that he couldn't consider the Parada rule as a matter of law? In other words, what is our review of the rejection of the Parada rule? Is it de novo or just a discretion? If the rule is mandatory, as we have argued, then it's definitely de novo. That is a question of law. Was he required to award a proportion of the whole? Did he conclude the opposite, that he could not use it? I would not necessarily characterize his decision that way. No. In his conclusion, do you? He concluded that he was required to find the causation or the attribution of the profits. And what he overlooked was the fact that section 210 of Restatement 1936 is the causation rule. It is the attribution rule. It is the rule that the pre-merger equity court used in an accounting for profit to determine what portion of that commingled pot of money is the result of the contribution of the plaintiffs whose money has been wrongfully commingled with other money. And that portion is their proportionate share of the whole. That is the attribution rule. And for, you know, there certainly are, as we cited in our brief. The red light is on. Oh, I'm terribly sorry. I was seeing the numbers counting and thinking that that was counting down still. Thank you very much. Thank you.
judges: Barbara Milano Keenan, James A Wynn, Jr., Henry F. Floyd